UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT JAMES HART, | ) |
| Plaintiff | ) |
| v. | ) 2:24-cv-00140-JAW |
| JUSTICE JENNIFER ARCHER, et al., | ) |
| Defendants | ) |

**RECOMMENDED DECISION AFTER REVIEW OF COMPLAINT**

Plaintiff, a pretrial detainee, alleges that in a state court criminal prosecution, Defendants are violating or have violated certain constitutional protections. (Complaint, ECF No. 1.) The defendants consist of a judge, a prosecutor, a court clerk, and a local sheriff.

Plaintiff's complaint is subject to a preliminary review "before docketing, if feasible or . . . as soon as practicable after docketing," because plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Following a review of Plaintiff's allegations, I recommend the Court dismiss the matter.

**BACKGROUND AND FACTUAL ALLEGATIONS**

In November 2022, Plaintiff was in his vehicle when he was approached by law enforcement officers, questioned, and arrested. (Complaint, 2:23-cv-00169-NT, ECF No. 1, "the other action.") In April 2023, while in state pretrial custody, Plaintiff filed a federal

complaint seeking money damages because, he alleged, the stop, questioning, and search of his vehicle violated the Fourth Amendment.  (*Id.* at 5.)  After a preliminary review of the complaint in the other action, the Court stayed the case because the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to dismiss requests for declaratory or injunctive relief and stay requests for monetary relief from a pending state criminal prosecution.  (Stay Order, 2:23-cv-00169-NT, ECF No. 8.)

In a status report filed in November 2023 in the other action, Plaintiff sought an injunction; the Court dismissed the request.  (Status Report, 2:23-cv-00169-NT, ECF No. 11; Recommended Decision, 2:23-cv-00169-NT, ECF No. 12; Order, 2:23-cv-00169-NT, ECF No. 14.)  In a status report filed in the other action in April 2024, Plaintiff asserted that his state case is scheduled for trial in May or June 2024 and requested an injunction to stop the state court criminal proceeding on double jeopardy grounds because a jury had been selected and sworn in January 2024 but later dismissed.  I recommended the Court dismiss the request for injunctive relief.  (Status Report, 2:23-cv-00169-NT, ECF No. 16; Recommended Decision, 2:23-cv-00169-NT, ECF No. 18.)  When Petitioner filed the status report raising the double jeopardy issue, he also filed the complaint in this case.

In this case, Plaintiff alleges that after a jury was impaneled, sworn, but later dismissed, the state obtained another indictment asserting the same charges.  (Complaint at 3, 5.)  Plaintiff asserts the transcript of the proceedings does not reflect that the jury was sworn.  (*Id*. at 5; *see also*, *id.* at 3 ("Written transcripts from that day were altered to exclude the swearing in"); *id.* at 13 (the court clerk's office "either willfully or inadvertently omitted from the official written transcript at jury selection the swearing in of the jury")).

A state court judge denied Plaintiff's motion to dismiss the indictment. (*Id*. at 8.) Plaintiff alleges the state court prosecution subjects him to double jeopardy in violation of the Fifth Amendment to the United States Constitution.

Plaintiff also alleges ineffective assistance of counsel and a violation of his right to a speedy trial. Plaintiff further alleges that despite repeated requests, his attorney has failed to file several motions on his behalf. (*Id*.) Plaintiff asserts he has been held in jail without bail "for almost eighteen months." (*Id.* at 13.) Plaintiff seeks monetary damages and asks the court for an "injunction to determine whether or not the jurors selected on January 4, 2024, were legitimately administered the trial oath before this prosecution is permitted to proceed." (*Id*. at 13–14.)

## LEGAL STANDARD

Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting T*wombly*, 550 U.S. at 569 n. 14).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo, N.A.,* 717 F.3d 224, 231 (1st Cir. 2013); s*ee also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## DISCUSSION

As a general rule, *Younger v. Harris*, 401 U.S. 37 (1971), requires abstention from the exercise of jurisdiction when a plaintiff seeks relief in federal court from a pending state criminal prosecution or analogous civil enforcement proceeding. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72–73, 78 (2013); *Sirva Relocation, LLC v. Richie,* 794 F.3d 185, 192–93 (1st Cir. 2015). Abstention is mandatory absent "extraordinary circumstances," such as: (1) an action "brought in bad faith . . . for the purpose of harassment," (2) "the state forum provides inadequate protection of federal rights," or (3) the challenged "state statute is flagrantly and patently violative of express

constitutional prohibitions" or there is "a facially conclusive claim of [federal] preemption." *Sirva Relocation,* 794 F.3d at 192, 197.

The *Younger* doctrine typically requires dismissal of requests for declaratory or injunctive relief but also extends to monetary relief because an award would "have the same practical effect as a declaratory judgment." *Rossi v. Gemma*, 489 F.3d 26, 37 (1st Cir. 2007). Unless the claims are otherwise subject to dismissal, "monetary claims which cannot be asserted in a parallel state proceeding ordinarily are stayed pending completion of the state case." *Cassell v. Osborn*, 23 F.3d 394 (1st Cir. 1994); *see also*, *Rossi*, 489 F.3d at 38; *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) (finding "no discretion to dismiss rather than to stay" a plausible money damages claim that was not redressable in the state proceeding).

Plaintiff has not alleged sufficient facts to permit a plausible finding of extraordinary circumstances to overcome *Younger* abstention if it applies here. For example, Plaintiff has not demonstrated that the state courts have refused to permit him to raise his federal claims in that forum. To the contrary, Plaintiff's assertion that he moved to dismiss the indictment suggests that the state court considered and denied Plaintiff's relief based on the issues he raises here. (Complaint at 8.) Plaintiff's complaint, however, arguably implicates two narrow categories of claims that do not fall within the *Younger* doctrine: "credible claims of double jeopardy violations," *Holloway v. New Hampshire*, No. 21-CV-456-JD, 2021 WL 5868223, at *3 (D.N.H. Aug. 3, 2021) (citing *In re Justices of the Super. Ct.*, 218 F.3d 11, 17–18 n.5 (1st Cir. 2000); and claims of unusual delay constituting a speedy trial violation provided the relief sought is an immediate trial rather than dismissal

of the charges. *Holloway*, 2021 WL 5868223 at *3; *Page v. King*, 932 F.3d 898, 902 (9th Cir. 2019) ("in rare cases" abstention is not required where the state court's delay is "extreme" and there is "no end in sight"). The state court detainee must first exhaust the state court remedies for those claims, *Olsson v. Curran*, 328 F. App'x 334, 335 (7th Cir. 2009), but if pretrial relief is denied in state court, the federal claim can proceed before resolution of the state case because the additional delay in federal review until after trial could itself cause additional irreparable damage to the federal constitutional right. *Winn v. Cook*, 945 F.3d 1253, 1261–63 (10th Cir. 2019).

A.     **Double Jeopardy Claim for Injunctive Relief**

The Double Jeopardy Clause prohibits any person from being "twice put in jeopardy of life or limb" "for the same offense." U.S. Const. amend. V. The protection "prohibits multiple punishments for the same offense," *United States v. Morris*, 99 F.3d 476, 478 (1st Cir. 1996), it "shields a defendant from a second prosecution for the same offense after either conviction or acquittal," *id.*, and it "restrains the government from using its power and resources to subject a defendant to serial prosecutions" without reaching a verdict, "thus prolonging his ordeal and unfairly enhancing the prospect of his ultimate conviction." *United States v. Toribio-Lugo*, 376 F.3d 33, 38 (1st Cir. 2004).

"In a jury case, jeopardy attaches when the jury is empaneled and sworn." *United States v. Pacheco*, 434 F.3d 106, 112 (1st Cir. 2006). To balance "the defendant's prized right to have his trial, once under way, completed by a particular trier," *Toribio-Lugo*, 376 F.3d at 37 (citing *Arizona v. Washington*, 434 U.S. 497, 503 (1978)), with "the public's interest in fair trials designed to end in just judgments," *Wade v. Hunter*, 336 U.S. 684, 689

6

(1949), "a judge's decision to discharge an empaneled jury and declare a mistrial" over a defendant's objection "does not bar retrial when, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Garske*, 939 F.3d 321, 328–29 (1st Cir. 2019).

Establishing manifest necessity is more difficult when the mistrial would be "accompanied by a valence of prosecutorial abuse" and is easier when the "possibility of prosecutorial abuse seems far-fetched (the paradigmatic example of which is a hung jury). . . ." *United States v. Dennison*, 73 F.4th 70, 76 (1st Cir. 2023). The manifest necessity analysis "is informed by a triumvirate of interrelated factors: (i) whether alternatives to a mistrial were explored and exhausted; (ii) whether counsel had an opportunity to be heard; and (iii) whether the judge's decision was made after sufficient reflection." *Toribio-Lugo*, 376 F.3d 33, 39 (1st Cir. 2004).

The factual allegations in Plaintiff's filings are insufficient to state a plausible double jeopardy claim that might fall outside the bounds of the abstention doctrine. First, because Petitioner is evidently party to an ongoing interlocutory appeal from the denial of his motion to dismiss the charges in state court, (Complaint at 8), he arguably has not yet exhausted the available state court remedies for the double jeopardy claim. More importantly, Plaintiff alleges only that he saw some potential jurors swear an oath and the jurors were later dismissed with no context for the dismissal. For example, Petitioner does not describe the jury selection process, which parts of the alleged trial process occurred or did not occur, how long the jury was empaneled, when the jury was dismissed, whether he agreed or objected to the dismissal of the jury, what steps, if any, the state court explored

7

before the jury was dismissed, or the reason the jury was ultimately dismissed. Petitioner also acknowledges that transcripts of the proceedings do not support his contention. He thus essentially relies on what amounts to be an alleged conspiracy among court personnel and perhaps others involved in the case to destroy or conceal evidence regarding the empanelment and oath. Without any facts, the pleadings do not permit an inference that this is "the type of 'credible' or 'colorable' double jeopardy claim . . . that could warrant finding an exception to *Younger* abstention . . . ." *Holloway*, 2021 WL 5868223, at *3.

**B.     Speedy Trial Claim for Injunctive Relief**

The Speedy Trial Clause of the Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right to a speedy trial "necessitates a functional analysis of the right in the particular context of the case," and courts therefore balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 521, 530 (1972); *see also United States v. Carpenter*, 781 F.3d 599, 608 – 17 (1st Cir. 2015). The first factor, the length of the "unjustified" delay, serves as "a triggering mechanism for the rest of the analysis," and a delay of approximately one-year is generally considered "presumptively prejudicial." *Carpenter*, 781 F.3d at 609–10 n.9.

Plaintiff arguably seeks dismissal of the charges, which would not permit this Court to consider the claim. Even if Plaintiff intended to seek an injunction ordering an immediate trial, the factual allegations in Plaintiff's filings are scant and do not state a plausible speedy trial claim that would not be subject to the abstention doctrine. While the state charges have now been pending for more than one year, Plaintiff provided few details

8

about the proportion of the overall delay that is attributable to the State or that Plaintiff considers unjustified. Plaintiff did not file copies of the state court docket, and the details that are discernible from his filings undermine rather than support his claim. For instance, a portion of the delay was evidently caused by Plaintiff's desire to seek alternate counsel, (Status Report, 2:23-cv-00169-NT, ECF No. 9), Plaintiff evidently filed a motion for a stay of the state case, which was granted, (Complaint at 8), and Plaintiff has made other filings, such as a motion to dismiss and an interlocutory appeal, that have contributed to any delay in the trial of the case. In other words, many of the alleged facts suggest that significant portions of the time between Plaintiff's initial appearance and trial would be justified for purposes of the speedy trial analysis. Dismissal of the speedy trial claim, therefore, is warranted.

**C.     Monetary Claims**

Plaintiff requests compensatory and punitive damages from the alleged double jeopardy claim and (presumably) the speedy trial claim. Because the exclusive remedy is ordinarily dismissal of the charges, it is not obvious whether damages are available for a double jeopardy or a speedy trial violation. *See e.g.*, *Bramhall v. Gill*, No. 2:19-CV-00477, 2023 WL 2941545, at *6 (D. Utah Jan. 31, 2023) (noting that many courts have concluded that damages remedy is not available for speedy trial violation but at least one district has allowed claims to proceed). Even if damages are theoretically available for double jeopardy and speedy trial violations, the Court ordinarily would stay the damages claims until resolution of the state proceedings, as the Court did in the other action. A stay, however, is not necessary here because each of the named defendants is immune from

liability and because Plaintiff has not alleged enough facts to state a plausible claim for relief.

Defendants Archer and Mason are judicial officers and are therefore shielded by absolute judicial immunity based on the special nature of their responsibilities. *See generally*, *Butz v. Economou*, 438 U.S. 478, 511 (1978); *see also*, *Corley v. Wittner*, 811 F. App'x 62, 63 (2d Cir. 2020) (state court judge was entitled to absolute immunity from speedy trial claim).[1] Defendant Hudson-MacRae is likewise entitled to absolute prosecutorial immunity regarding her charging decisions because the alleged facts do not support a plausible inference of conduct exceeding traditional prosecutorial duties, such as fabricating evidence. *See generally*, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also*, *Corley*, 811 F. App'x at 63 (prosecutor was entitled to absolute immunity from speedy trial claim); *Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) (prosecutor is "plainly afforded absolute immunity" against double jeopardy claim).

Finally, the only allegation against Defendant Samson is that he is responsible for holding Plaintiff in custody. Because there are no facts that would undermine the criminal charges and an ongoing state court proceeding as sufficient cause to support confinement,

---

[1] Even if Defendant Mason is not entitled to absolute immunity because Plaintiff complains about Defendant Mason's administrative duties rather than her role in the judicial process, the claims against her still fail. Plaintiff does not assert that Defendant Mason was involved in transcribing the jury selection proceeding or that Defendant Mason was the individual who allegedly altered the transcripts to conceal the jury oath. Plaintiff has only alleged that Defendant Mason had an oversight role over other judicial employees and a general responsibility to protect the accuracy of court records, which is not enough to state a plausible claim of entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (where vicarious liability does not apply, such as a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated" federal law).

Defendant Samson would be entitled to qualified immunity even assuming Plaintiff could ultimately establish a constitutional violation and have his charges dismissed. *See generally*, *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also*, *Jackson v. City of Cambridge*, 83 F. App'x 338, 339 (1st Cir. 2003) (when an officer had probable cause, "[q]ualified immunity would protect him from any damages claim based on the alleged double jeopardy violation arising out of his pursuit of the . . . charges").

## CONCLUSION

Based on the foregoing analysis, after a review in accordance with 28 U.S.C. § 1915A, I recommend the Court dismiss the complaint.[2]

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of May, 2024.

---

[2] Because I recommend dismissal of the matter, I dismiss as moot Plaintiff's motion to proceed without prepayment of fees. (Motion, ECF No. 4.)